The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the Opinion and Award except for the deletion of Finding of Fact Number (5).
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law certain jurisdictional and other factual Stipulations which were entered into by the parties prior to the hearing before Deputy Commissioner Shuping in a Pre-Trial Agreement.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 62-year-old female, who is currently receiving Social Security Disability benefits and has not looked for work since her 23 August 1991 back injury. She has a high school education, took one year of bookkeeping courses at a community college and has training as a nurse's aide with a resulting nurse's aide certificate. Her only other prior work experience has been as a nurse's aide requiring the type of medium-level work she can no longer engage because of her 23 August 1991 back injury.
2. She was employed by defendant-employer for almost ten (10) years, initially as a cashier/checker and then as a cashier/supervisor, which involves the same type of medium-level work resulting in her being prohibited from returning to her former job at defendant-employer.
3. Although in 1971 plaintiff had undergone a spinal fusion of the L3-L4, L4-L5, and L5-S1 levels of her lumbosacral spine and prior to her 23 August 1991 back injury had not only developed degenerative disc disease as well degenerative arthritis in her lumbosacral spine, but had experienced chronic back problems manifested by intermittent episodes of back and right leg pain requiring conservative treatment, including ones in 1984 and 1987; with conservative treatment she recovered from these same episodes and was able to continue regularly work until the date in question despite her chronic back problems.
4. In the process of lifting a ham out of a cart for a customer, plaintiff sustained the admittedly compensable back injury giving rise to the Industrial Commission's prior Award, which materially aggravated her existing, but non-incapacitating degenerative disc disease and degenerative arthritis thereby proximately contributing to her ultimate disability resulting in the chronic incapacitating back and right leg pain she continues to experience.
5. The day following her injury plaintiff was seen at Greenville Health Care by Dr. Edward Dixon, who provided a conservative course of treatment consisting of strict bed rest over the weekend, heat and medication. When her condition did not improve, Dr. Dixon referred plaintiff to a neurologist, Dr. Frank Fleming, who not only provided a similar course of treatment, but joined with plaintiff's family physician, Dr. Richard Rawl, in referring her to Dr. Robert Timmons to determine whether she was a surgical candidate and had also treated her for similar episodes of back and right leg pain in 1984 and 1987, from which she subsequently recovered with conservative treatment enabling her to return to work and continue regularly working until 23 August 1991.
6. Because she was not a surgical candidate, but was suffering from neurological signs and radicular pain, Dr. Timmons referred plaintiff back to Drs. Fleming and Rawl for chronic pain management and ultimately Dr. Fleming referred plaintiff back to Dr. Rawl for the same.
7. Dr. Rawl subsequently referred plaintiff to the rheumatology clinic at East Carolina University School of Medicine, where she was initially seen by Dr. David Frazier, who similarly provided a conservative course of treatment. When plaintiff continued to experience incapacitating back and leg pain, Dr. Frazier referred her to Dr. Sanford Vernick at the East Carolina University School of Medicine Pain Clinic, and there she received a back brace, physical therapy and trigger point injections, before Dr. Frazier referred plaintiff back to her family physician, Dr. Rawl, who has since assumed responsibility for management of her chronic incapacitating pain and has attempted to do so by means of a TENS Unit and multiple medications.
As a consequence of the non-steroidal anti-inflammatories that she has taken for her back injury, plaintiff has had several episodes of gastric distress requiring treatment and that she stop taking the same medication.
8. Despite all the treatment she has received, however, plaintiff continues to experience chronic and incapacitating back pain. When she becomes active her pain worsens forcing plaintiff to limit her activities. Because of her pain, plaintiff cannot sit, stand or walk for significant periods without her pain worsening and in order to obtain relief from it must lie down from fifty to thirty (15-30) minutes, two or three times a day. At night she sleeps poorly as a result of her chronic incapacitating pain and has difficulty concentrating during the day.
9. At the time plaintiff picked up the ham on 23 August 1991 aggravating her existing, but not incapacitating, degenerative back condition, she did not merely sustain a back strain; but rather, a permanent back injury manifested by the chronic incapacitating back and leg pain she continues to experience.
10. Because of her permanent back injury plaintiff is unable to return to her regular cashier/supervisor's job for defendant-employer; but rather, is limited to part-time sedentary work and there is no evidence that this type of part-time sedentary work is available in the open and competitive labor market for someone of plaintiff's age, education, background, and work experience having the physical limitations she does from her injury — much less that plaintiff can obtain such employment.
11. Although she certainly has the intellectual ability and skills necessary to perform part-time sedentary work and there are part-time sedentary jobs available such as the ones identified by defendant-employer's vocational expert, Theodore Sawyer; in order to be able to perform part-time sedentary work in an open and competitive labor market plaintiff would not only be expected to be able to report to work on a consistent, daily basis, but to work a continuous number of hours at work in order to be a productive employee competing with other productive employees.
12. As a result of her permanent back injury plaintiff experiences exacerbations and remissions of her chronic, incapacitating back and leg pain or so-called good and bad days and because of this there would be days when she could not report to work or bad days, which have become more frequent since her injury as a result of her condition deteriorating manifested by her ability to perform even less physical activities such as the walking she was earlier attempting to do, but when she did report to work she would not be able to work on a continuous basis, neither of which is she able to do because of her chronic incapacitating back and leg pain and thus it would be futile for her to attempt to look for this particular type of work.
13. In March of 1994 defendant-employer offered plaintiff a part-time collection clerk's job where she was responsible for collection of returned checks and delinquent accounts. The job did not exist prior to defendant-employer offering it to plaintiff. Before then the individual store managers were responsible for those collections. The job was never advertised by defendant-employer and after plaintiff justifiably refused to accept the same defendant-employer never offered it to anyone else; but rather, instead hired an independent collection agency to do that type of work.
14. The job did not require plaintiff to work on any particular work day during the week or any scheduled number of hours a day; but rather, provided for a flexible work schedule that allowed plaintiff to spread the twenty (20) hours she was supposed to work over seven days.
15. The above-described part-time collection clerk's job that was offered plaintiff had to be so modified because of her permanent back injury that it was not one that would ordinarily be available in the open and competitive labor market and she was justifiable in refusing this "make work" or "sheltered work."
16. For the reasons stated in defendants' contentions, this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness entitling plaintiff's counsel to an award of attorney fees pursuant to the provisions of N.C.G.S. § 97-88.1.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the permanent back injury sustained on 23 August 1991, plaintiff is totally and permanently disabled entitling her to compensation at a rate of $180.00 from 24 August 1991 to the scheduled hearing date and thereafter continuing throughout her lifetime at the same rate, subject to a change of condition, medical and employment. N.C.G.S. § 97-29;Dalton v. Anvil Knitwear, 119 N.C. App. 275, 458 S.E.2d 251
(1995).
2. For the reasons stated in the above Findings of Fact, plaintiff was justified in refusing the collection clerk's job offered her by defendant-employer. N.C.G.S. § 97-32; Peoples v.Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986).
3. For the reasons stated in the above Findings of Fact, this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness entitling plaintiff's counsel to an attorney fee pursuant to the provisions of N.C.G.S. § 97-88.1.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her total and permanent disability, compensation of $180.00 per week from 24 August 1991 to the scheduled hearing date and thereafter continuing at the same rate throughout her lifetime, subject to a change of condition, medical and employment, and to a credit for the compensation benefits that defendant-employer has continued to pay under the Industrial Commission's original Award since 24 August 1991, as well as a reasonable attorney fee for plaintiff's counsel.
2. Defendants shall forward every fourth compensation check payable herein directly to plaintiff's counsel for his fee.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary expenses incurred by plaintiff as a result of her 23 August 1991 back injury throughout her lifetime when bills for the same are submitted in accordance with Industrial Commission rules.
4. Defendants shall bear the costs, including as part thereof, expert witness fees in the amount of $450.00 to each of the vocational experts involved, Sawyer and Downs, as well as the expert witness fees previously awarded to Drs. Timmons, Rawl and Crisp to the extent the same have not already been paid, but not attorney fees pursuant to the provisions of N.C.G.S. § 97-88.1, because this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness.
 S/ _____________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________________ LAURA K. MAVRETIC COMMISSIONER
(see CONCURRENCE below)
S/ _____________________________ J. RANDOLPH WARD COMMISSIONER
TJB/mj 3/1/96